Good morning, Your Honor. May it please the Court. Martin Buchanan appearing for the Plaintiffs and Appellants. I'd like to focus my argument this morning on the second step of the discretionary function exception, which is whether the specific challenged conduct in this case involved matters of political, economic, or social policy of the type the exception was designed to shield from liability. So I want to be very precise about what the challenged conduct is. The Forestry staff to identify this particular tree as a high hazard during its routine inspections using the seven-point rating system that Yosemite National Park has adopted for identifying hazardous trees. If the forestry staff had identified this particular tree as a high hazard, then Yosemite's written hazard tree policies would have required some kind of mitigation measures to remove the hazard. So we don't dispute that identifying whether a tree is hazardous and likely to fail does involve some type of discretion. That's not disputed. The question is whether it was the type of discretion that the discretionary function exception was designed to shield from liability. Counsel, before I ask you my question, I just want you to know that we are really sorry for the tragedy that brought us here, and we offer our sympathies to your clients for their incredible loss. So with that said, I wanted to ask you specifically what policy, in your view, mandated that the tree be abated? The policy... Because if the forest service has discretion on whether or has to exercise discretion on whether or not to abate the tree, then the discretionary function exception precludes relief. But if there is a policy that mandates abatement, then the discretionary function exception would not preclude recovery. Do you agree with that? Yes and no. I think there's two parts to this. There's, first, evaluating the hazard, whether it's high, low, or medium. That involves discretion. But in our view, not the type of policy discretion that the exception was designed to shield. But once the tree is identified as a high hazard, there is no discretion, and the policy requires abatement or mitigation measures. So you think that's not the type of discretion that is contemplated in the FTCA? Sure. Because these are forestry staff out in the field exercising their professional or scientific judgment about whether a tree is likely to fail. But on that point, is there an existing policy or a rule or some sort of tradition which would establish their duty to identify trees? If there is not, then I don't see how you can imply some sort of duty to identify a tree. Well, I think that's what Yosemite Directive No. 25 is all about. Relying on the directive, and then the question is, was the directive negligently carried out? Exactly. And that's our entire point, is that we're not disputing that the formulation of this directive is a policy judgment. But we're not challenging the directive. We're not challenging the rating system. We're challenging the negligence in implementing those policy judgments out in the field and not identifying this particular tree as a hazardous tree. And that, Your Honor, to get back to your question, that involves a matter of judgment that is just scientific and professional in nature, similar to the types of judgments that this Court has held do not fall under the exception, as in Wisnant or Kennewick Irrigation District, where in both cases the Court said matters of scientific and professional judgment fall outside the scope of the exception. I was just wondering if we have lots of private campgrounds around. Under most State laws, wouldn't a private campground be liable if they had a tree, if they permitted people to camp under a tree that was likely to fall down? No question. I don't think that would be debatable, Your Honor, yes. Isn't the purpose, and I gather the purpose of the Tort Claims Act is to put the government in the position of a private person with respect to negligence, right? Yes, Your Honor, and with this narrow exception for policy decisions, for matters that involve some kind of economic or political issue. But the Yosemite Forestry staff, they're not out there making political, economic or social policy decisions. But so if, for example, the Forest Service decided that they were not going for purposes of, I don't know, forest fire management or whatever, they weren't going to clear out any of these trees, that might well be a policy decision. It might. I agree with that, Your Honor. I do agree with that. I mean, when you're talking about a decision made at that level, where you're balancing various... Maintaining the whole national forest. Yes, absolutely. That would probably be a policy decision that would be shielded from liability. And that's not what we have here? That's not what we have here, because we accept all of the higher-level policy decisions that were made. We accept the seven-point rating system. We believe that that entire system is a good way of identifying hazardous trees. All we're saying is there was negligence in the lower-level forestry staff in carrying out those policy decisions and not identifying this particular tree as hazardous. Now, maybe we'll lose on the merits, but in terms of the immunity, this is not the type of policy, broader policy decision that the immunity was designed to shield. And I really think this case does fall within the lessons of cases that this Court has decided, like Wisnet and Kennewick Irrigation District. You know, I think Chad, let's say in Chad there had been a seven-point rating system to evaluate how hazardous the goats were. And we had people who were out in the field who were supposed to be trained on what is the likelihood that a goat will attack a human out there. And the claim were that the people out in the field who supposedly had the scientific and professional knowledge about goat hazards, they were negligent. And instead of rating it as a five, they should have rated it as a seven. Then that case would be on all fours with our case, and I think it would have come out differently. Then you would have had just a lower-level implementation of a higher-level policy decision, which is what we have in this case. And I think that's what distinguishes this case from Chad. And so you rely on Yosemite Directive 25. Does the wording of that directive matter at all? Well, I believe it does to some extent. I mean, it does because it says that if a tree is rated as a high hazard, it requires, and it uses the word requires, some type of abatement or mitigation. And so at that level, you remove any discretion. I mean, we have discretion at the lower level that we say is not shielded. But at the higher level, the policy decision has already been made. If it's rated high, some abatement or mitigation must be undertaken. Is there any discretion in Directive 25 at all, in your view? Not for high hazard trees. And I do want to be clear about this inspection system and this seven-point rating system, it's not Yosemite-wide. It only applies in developed areas where there's a potential that a hazardous tree might strike you. And so it doesn't even apply if there's no potential for strife. It's not within striking distance. So all we're talking about here are hazardous trees in developed areas where somebody or some property might be hurt, or in our case. But you identified that as the directive that compelled action. So that's why I was asking you if there is any discretionary language in that directive. Does that defeat your argument? I don't think there is discretionary action. But my question was, if there is discretionary language in that directive, does that defeat your argument? I don't think it would defeat our argument in terms of the conduct that we're challenging here. The conduct that we're challenging here is the lower-level conduct of not identifying the tree as hazardous. That's what we're claiming the negligence is. And so our argument would still apply, even if, assuming that they had identified it at a higher level, that they identified it as hazardous. Would there then be some discretion? That's a complicated question that I have some difficulty answering on my feet, to be candid. But I think it still would apply. And so I would say it doesn't make any difference. But the language is mandatory. It says once a tree is identified as hazardous, it must be abated or mitigated. Thank you. May it please the Court. Philip Scarborough on behalf of the United States. The problem with the appellant's argument is that they say that they're not challenging the higher-level policy decision. But, in fact, that is what they're challenging. The only way that you can get into the point that they're challenging, where they say it's a lower-level individual who's negligently applying the tree hazard seven-point system, is if you assume that this person is negligent, that this particular tree was actually brought to the attention of the Park Service staff, and that's simply not what the record showed. What the record showed was that this tree had never previously been brought to the attention of the Park Forester. There were the tree surveys that were conducted in the two prior years that showed that no particular hazard trees in this specific campsite had been identified as requiring further attention. So in point of fact... I don't understand that. That may mean that they weren't negligent, but that doesn't give the government immunity to make a lawsuit. Actually, Judge Schroeder, if I can just respond to that as a legal matter, whether or not there's negligence in the implementation of the policy simply is irrelevant. And this Court has said that many, many times. If there's negligence in the policy and the carrying out of the policy, then that's simply irrelevant. Well, those are two different things. The policy is one thing, and then the implementation is subject to negligence. Well, I disagree with that, actually, as well, Your Honor, because, in fact, in Chad, I believe the Court said that, and certainly in other cases that have followed, and in previous cases, the Court has said that the implementation design, implementation distinction that the plaintiffs are attempting to make here doesn't apply if the implementation itself requires the application of policy considerations. And so if I can just point out in the record... Policy considerations. Yes, that's correct. The question is whether or not it's a hazard, and if they don't identify it as a hazard, and they're supposed to identify it as a hazard, why isn't that a question of negligence? Well, when you phrase it like that, it is a question of negligence, but negligence is irrelevant. Negligence is irrelevant to the discretionary function exception determination. This Court has held that many times. And so whether or not the Park Service was negligent is not something that is legally relevant under the standard. Well, I'm not understanding. You can exercise discretion in all kinds of things by running a red light, but that doesn't mean that it's a discretionary function. Well, that's certainly true. I agree that running a red light would not be a discretionary function. But what we have here is something very different. What we have here is the management of the very resource that the National Park Service is statutorily commanded to preserve in its natural state. Yes, but when they adopt a specific rule which is binding on the staff to implement, we've dropped from the policy level, have we not? Well, yes and no. So if it is a mandatory and specific rule, then that would be true. But if you look at the policies... Well, counsel says it is mandatory. Yes. And so I'd like to draw the Court's attention to the ways that Directive No. 25 is not mandatory with respect to the particular hazard, the hazard rating. If you'll take a look at ER 256, you'll see that it gives discretionary language to the staff. It says that a park may consider the knowledge, experience, and judgment of the park's field staff in conjunction with the numerical hazard tree rating system to determine the appropriate management response for a species and target specific hazard. It's calling specifically into mind the experience and judgment and discretion of the park staff. Well, that's true of a contractor. I mean, I — what is your response to the question of whether a KOA campground would be liable in negligence if they let people camp under a tree that was about to fall down? So the KOA campground is not subject to the Organic Act. It's not required by statute to preserve the trees, and it's not required to balance public access with the preservation of the trees. I'd also like to draw the Court's attention to the specific defects that the plaintiff's expert said were. Wait, wait. Are you saying that the government made a specific policy judgment that this tree had to be there because it was essential for forest management? Your Honor, again, I think that that's not what I'm saying. But what I think that that question is, again, not the correct legal standard. It's the distinction between the KOA campground and the forest service. With respect, Your Honor, no, it's not. What I'm saying is that the park service, unlike the KOA campground, is statutorily bound to preserve the forest where the campground exists, and it also must balance that. But it's also bound to protect the people who come onto the forest land for purposes of camp. And it's precisely that policy. The same way that the KOA campground is. And it may be that, Your Honor, I disagree on whether there's a distinction between the KOA campground and the park service. But the KOA is just simply as well. You agree that the purpose of the Tort Claims Act was to put the government in the same position as the private people under State law with respect to negligence. That's only the purpose of the Tort Claims Act if we get past the exceptions. If the exception applies, then State. It's correct, because the exception applies to the things that private people wouldn't do, like making policies. That's correct, right. And preserving a campground and making policy decisions with respect to that. So, and again, if I can draw the court's attention. My problem is that I look at that number 25, and it just seems to me that it imposes a duty on the staff to do something. Now, if they look at the tree and say, well, this is okay, that's the Chad case. But if they don't do anything, then there's a negligence issue, is there not? No, I disagree with that. What the policy says is that the park staff is required, the park staff needs to conduct periodic surveys. It doesn't say when. It doesn't say how, you know, it doesn't mandate any particular survey of an individual tree. In order for them to get past that first step, and this is why what they're actually challenging is not the implementation of the seven-point system to the specific tree at issue here. What they're really challenging is the fact that during the survey system that was implemented and that was conducted, as the record demonstrated, this particular tree didn't come to their attention. It's simply impossible. There are more than one million trees in the developed areas of Yosemite alone. And it's simply impossible to conduct an individual inspection and to conduct, you know, a seven-point rating with respect to every one of those individual trees. The Park Service, by its nature, has to use a survey system. And I would also point the Court to the Miranda case, which is very similar from the Third Circuit, as well as the Barrick Airlines case where, although in a different context, the Supreme Court approved a spot check system when enforcing safety regulations. So I think both of those cases demonstrate that the Park Service was within its discretion to use a survey system. And again, I would point the Court to the fact that there is no evidence in the record that this particular tree was ever brought to the attention of the Park Service. The other thing that I would note is that the fact that there's discretion in applying the system is demonstrated because the particular hazards or the particular defects that the plaintiff's expert identified are not actually even listed in Directive No. 25 as defects. The defects that they identified were that it was forked, that it had a prior failure, that it occurred, and those are simply not even defects that are listed. And I would point the Court to ER 263. It specifically mentions that the defect rating system is provided as an example and needs to be adjusted for local conditions. Now, with respect to whether the individuals who were actually going out there had in mind policy considerations, this Court has said repeatedly that if the implementation involves application of policy considerations, then that is within the discretionary function exception. And there were policy considerations. Brian Mattis, in his second declaration, which is, I think it's at ER 94, paragraph 10 or 11, indicated that during this time period, the Park Staff was focused, had to focus a great amount of its energy on dealing with pine beetle deaths in pine trees. And so, you know, these are the types of issues that the Park Service has to balance. There are policy considerations at issue with respect to how they go about handling the inspections, how they identify the trees, and then we haven't even talked about the discretion that's present once we get to what to do about it once a tree is identified as hazardous. I see that I'm almost out of time. The misrepresentation exception hasn't come up. I think it's clear that they're pleading a misrepresentation on that claim. And so, unless there are further questions, I'll submit. Thank you, Counsel. Counsel, you used all your time, but we'll give you one minute for rebuttal. Thank you, Governor. Just two very quick points if I have time. First, Counsel referred to ER 256 and arguing that there was no mandatory language. I'd like to point out the mandatory language on that very page. First of all, it says, regardless of the rating system used, an essential component is identification of action thresholds. A park hazard tree management program must consider these action thresholds based on a tree's rating. Number three says hazardous conditions rated high or above require a management action. And then midway through the page, it says trees with a high or very high hazard rating will require some type of abatement mitigation. Was this tree rated, though? That's the problem. They missed it, Your Honor. They missed it. We don't know what they did exactly. That doesn't apply here. The question is whether or not there was a mandatory duty to identify this tree and then perform the abatement. So that language isn't necessarily the appropriate language. The issue is what mandatory duty was there to identify this tree? Well, this directive requires inspection. And counsel is right. It doesn't specifically say that the staff must inspect every single tree. It also doesn't say that a survey is okay. And even if what they do is a survey, we would still be arguing it would be negligent to conduct a survey and not analyze a tree that's directly above a campsite where people sleep at night. So they're still negligent. Does that take an issue with the mechanism that the park has decided to identify the tree from over a million trees to identify which of those trees should be mitigated? I don't think so. I'm sorry. I apologize for interrupting. I don't think so. I think it's just negligence in the implementation of this policy. At the policy level, we don't have any complaints. We're just talking about lower-level implementation. Okay. We understand your argument. You've exceeded your time. Okay. Thank you, Your Honor. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Schroeder, O'scannlain, Rawlinson